**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ANTHONY BROCUGLIO, SR.,<br>Plaintiff,<br><br>v.<br><br>WILLIAM PROULX, ET AL.,<br>Defendants. | CIVIL ACTION NO.<br>3:99cv1888 (SRU) |

**RULING ON DEFENDANTS' MOTION FOR RECONSIDERATION**

In September 1999, Anthony Brocuglio brought a lawsuit against the Town of East Hartford, the Town's mayor, deputy mayor, police chief, and three police officers, alleging numerous violations of his civil rights. Brocuglio's claims arose out of an incident on September 27, 1996, when Officers William Proulx and James O'Connor went to Brocuglio's home, accompanied by a police dog, to ticket abandoned vehicles. That visit culminated in an altercation between Brocuglio and the officers. In January 2002, I granted summary judgment in favor of Brocuglio on his unreasonable search claim against Proulx and O'Connor. Defendants appealed my ruling, and in June 2003, the Second Circuit Court of Appeals issued a summary order, dismissing the appeal.[1] On October 18, 2005, following a jury trial, the jury awarded Brocuglio nominal damages of $20 on that claim. The jury returned a verdict in favor of all defendants on all other counts. The clerk entered final judgment on all claims and parties on October 26, 2005.

On November 2, 2005, defendants Proulx and O'Connor filed a motion asking me to reconsider my ruling granting summary judgment in favor of Brocuglio on his unreasonable

[1] *Brocuglio v. Proulx*, 67 Fed. Appx. 58 (2d Cir. 2003) (non-precedential summary order).

search claim, relying upon Rules 50, 59(e) and 60 of the Federal Rules of Civil Procedure.[2] Defendants do not seek a new trial on the unreasonable search claim; rather, they seek reconsideration of my summary judgment ruling and a judgment as a matter of law that the defendants are entitled to qualified immunity. *See* Defendants' Memorandum at 6 n.2. Specifically, defendants ask me to set aside my prior ruling and the jury's award of nominal damages, and enter judgment as a matter of law in favor of defendants on Brocuglio's unreasonable search claim. *See* Defendants' Memorandum at 21. For the reasons that follow, I grant the motion for reconsideration but deny the relief requested.

## I. Standard of Review

In general, there are three grounds that may justify reconsideration: (1) an intervening change of controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A "motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." *Lopez v. Smiley*, 375 F. Supp. 2d 19, 21-22 (D. Conn. 2005). It is also not appropriate to use a motion to reconsider solely to re-litigate an issue already decided. *Id.* A motion to reconsider should be denied, "unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* "[T]he failure to marshal all known

[2] Although defendants originally based their motion on Rules 50 and 54 of the Federal Rules of Civil Procedure, they subsequently corrected the motion to include Rules 59(e) and 60. *See* Defendants' Reply Memorandum at n.1.

facts in opposition to a summary judgment motion" does not provide grounds for relief under Rule 60(b). *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1147 (2d Cir. 1994) (internal citations omitted).

Defendants have argued that I should consider evidence that they did not submit at the time of my summary judgment ruling.[3] "Whether moving on the basis of presentation of new evidence under Rule 59(e) or Rule 60(b)(2), the standard for 'newly discovered evidence' is the same." *Patel v. Lutheran Medical Center, Inc.*, 775 F. Supp. 592, 596 (E.D.N.Y. 1991). *See also* 11 WRIGHT, MILLER, & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 2859 at 302 (2d ed. 1995) ("The same standard applies to motions on the ground of newly discovered evidence whether they are made under Rule 59 or Rule 60(b)(2), and decisions construing Rule 59 in this context are authoritative in construing Rule 60(b)(2)."). Under both Rule 59(e) and Rule 60(b), evidence that the movant possessed "is not newly discovered and does not entitle [the party] to relief." *Patel*, 775 F. Supp. at 596. The movant must present evidence that is "truly newly discovered," that is, evidence that "could not have been found by due diligence." *United States v. Potamkin Cadillac Corp.*, 697 F.2d 491, 493 (2d Cir. 1983).

## II. Discussion

Defendants make two principal arguments. First, they argue that, in September 1996, reasonable officers could have disagreed whether Brocuglio's fenced-in back yard adjacent to his home was curtilage entitled to the protection of the warrant requirement of the Fourth Amendment. Second, defendants argue that reasonable officers could have disagreed whether

[3] It should be noted that defendants do not argue that they did not have enough time to conduct discovery or that there were other logistical obstacles preventing them from submitting the relevant evidence at the summary judgment stage.

the plain-view exception to the warrant requirement justified the defendants' search of Brocuglio's fenced-in back yard without a warrant. With respect to both arguments, defendants complain that my original summary judgment ruling was incorrect for two reasons – essentially, one legal and one factual. They complain that I should not have granted summary judgment, because there were issues of material fact that could have affected the question whether the defendants were entitled to qualified immunity, and that there is now "new evidence" that compels me to alter my previous ruling. Defendants also complain that I should not have granted summary judgment, because the law was not clearly established with respect to the curtilage issue, and thus the defendants were entitled to qualified immunity.

First, with respect to the curtilage issue, the law was clearly established. *See Brocuglio v. Proulx*, 67 Fed. Appx. 58 (2d Cir. 2003) (non-precedential summary order) (noting that the law was clearly established in September 1996 that a fenced-in back yard is curtilage entitled to Fourth Amendment protection); *Oliver v. United States*, 466 U.S. 170, 180 (1984); *United States v. Dunn*, 480 U.S. 294, 300 (1987). In addition, defendants do not point to controlling law or facts that I overlooked when I concluded that there was no issue of material fact that defendants were not entitled to qualified immunity, nor is there any additional evidence that meets the "newly discovered evidence" standard or that would affect my decision.

Second, with respect to the plain-view issue, defendants should have raised the argument at the summary judgment stage. Nevertheless, defendants misinterpret the plain-view doctrine. The law was clearly established and no reasonable officer could have thought that the plain-view doctrine applied, because the officers did not have lawful access to Brocuglio's back yard.

A. Qualified Immunity Concerning Whether Brocuglio's Back Yard Was Curtilage

I granted summary judgment in favor of Brocuglio on his section 1983 claim based on defendants' violation of Brocuglio's right to be free from an unreasonable search, and I ruled as a matter of law that defendants were not entitled to qualified immunity on that claim. To prevail on a section 1983 claim, a plaintiff must prove four elements: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; and (4) damages. *See* 42 U.S.C. § 1983. Defendants do not challenge my holding that defendants violated Brocuglio's constitutional right to be free from an unlawful search, but rather challenge my ruling that they were not entitled to qualified immunity. Although defendants do not directly challenge my ruling on the violation of a constitutional right, I must necessarily examine that issue first, because it is the first step in a qualified immunity analysis.

1. *Qualified Immunity Legal Standard*

The doctrine of qualified immunity shields governmental officials from liability for conduct taken within the scope of their official duties, as long as "'their conduct does not violate a clearly established constitutional right of which a reasonable person would have known.'" *Huminski v. Corsones*, 386 F.3d 116, 143 (2d Cir. 2004) (quoting *Shecter v. Comptroller of the City of New York*, 79 F.3d 265, 268 (2d Cir. 1996)). Qualified immunity involves a three-step analysis: (1) whether the officials violated the plaintiff's constitutional right; (2) whether the law was clearly established with respect to that right; and (3) whether reasonable officers could disagree about whether their conduct was illegal. *See id.* "Clearly established means that (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing

law that his conduct was unlawful." *Pabon v. Wright*, 459 F.3d 241, 255 (2d Cir. 2006) (quoting *Anderson v. Recore*, 317 F.3d 194, 197 (2d Cir. 2003)). Even if a right is clearly established, a defendant may still establish immunity by "'showing that reasonable persons in their position would not have understood that their conduct was within the scope of the established prohibition.'" *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (quoting *In re State Police Litig.*, 88 F.3d 111, 123 (2d Cir. 1996)).

Determining whether or not a right is clearly established at any given time depends, in large part, on how that right is defined. With respect to defining the right at issue, the Second Circuit has noted:

> The chronic difficulty with this analysis for courts is in accurately defining the right at issue. An overly narrow definition of the right can effectively insulate the government's actions by making it easy to assert that the narrowly defined right was not clearly established. On the other hand, as the Supreme Court noted in *Anderson*, if the right is defined too broadly, "[p]laintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights."

*LaBounty*, 137 F.3d at 73-74 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). It is not necessary for the very action in question to have previously been held unlawful in order to bar the application of qualified immunity. *Wilson v. Layne*, 526 U.S. 603, 615 (1999). The question is whether, based on existing law, the unlawfulness of the action was apparent. *Id.* Here, the right at issue is Brocuglio's right to be free from unreasonable searches in his fenced-in back yard immediately adjacent to his home.

2. *Established Law Regarding Curtilage*

It has long been established that curtilage receives the same protections under the Fourth Amendment as the home itself. *See generally* WAYNE R. LAFAVE, 1 SEARCH AND SEIZURE: A

TREATISE ON THE FOURTH AMENDMENT § 2.3(f) at 598 (4th ed. 2004) ("LAFAVE") ("Certain lands adjacent to a dwelling called the 'curtilage' have always been viewed as falling within the coverage of the Fourth Amendment."). *See also Oliver*, 466 U.S. at 180 (noting that "the curtilage . . . warrants the Fourth Amendment protections that attach to the home"). "At common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life.'" *Id.* (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)). The term "curtilage" is defined by Black's Law Dictionary as "the land or yard adjoining a house, usually within an enclosure." BLACK'S LAW DICTIONARY 389 (7th ed. 1999).

"Open fields," in contrast, are not protected by the Fourth Amendment. *See* 1 LAFAVE § 2.4(a). The police may enter private property for a legitimate purpose without implicating the Fourth Amendment if they "restrict their movements to places visitors could be expected to go," such as walkways, driveways, and other areas where an individual does not have a legitimate expectation of privacy. *See Id.* § 2.3(f) at 600-03. "But other portions of the lands adjoining the residence are protected, and thus if the police go upon these other portions and make observations there, this amounts to a Fourth Amendment search, and this is so *even if these other portions are themselves clearly visible from outside the curtilage*." *Id.* at 603 (emphasis supplied).

The issue thus arises what is the extent of curtilage, i.e., where does curtilage end and open fields begin, because curtilage is often defined in contrast to an open field. *See, e.g., United States v. Reilly*, 76 F.3d 1271, 1275 (2d Cir. 1996) (noting that the common law of burglary distinguished between open fields and curtilage). The labeling of a particular area "curtilage" as opposed to "open fields," therefore, states a conclusion that the area is subject to Fourth

Amendment protections.

In *Dunn*, 480 U.S. at 301, the Supreme Court delineated four factors that bear upon the question whether an individual reasonably expects the area in question to be treated as the home itself such that it constitutes curtilage entitled to the protections of the Fourth Amendment: "(1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by." *See also Reilly*, 76 F.3d at 1276. Although courts should consider each factor, ultimately, the factors "must be evaluated as a whole." *Id.* at 1279. The four *Dunn* factors are not exclusive and should not be applied mechanically. *Id.* at 1276. The factors are merely "useful analytical tools," not a "finely tuned formula." *Id.* "The touchstone of the inquiry" is whether the individual has a reasonable expectation of privacy in the area at issue. *See id.* In sum, the four *Dunn* factors are guidelines meant to shed light on the ultimate question whether an individual has a reasonable expectation of privacy in a given area; the factors really have no independent relevance aside from guiding a court's reasonable expectation of privacy analysis. *See id.* Although the scope of curtilage relies on factual questions, those factual questions are guided by the preceding legal framework. *See id.*

3. *Whether Defendants Were Entitled to Qualified Immunity*

Based on the record evidence at the time of my summary judgment ruling there was no disputed issue of material fact that the fenced-in back yard was curtilage and that Proulx and O'Connor therefore violated Brocuglio's right to be free from unreasonable searches when they entered the curtilage to search for and tag allegedly abandoned vehicles. In addition, the law was

clearly established and no reasonable officer would think that the fenced-in back yard immediately adjacent to the home was not curtilage. Because there were no disputed issues of material fact that would affect that analysis, qualified immunity did not protect Proulx and O'Connor from liability as a matter of law and it was therefore appropriate to grant summary judgment in favor of Brocuglio.

Undertaking the central inquiry whether Brocuglio had a reasonable expectation of privacy in his back yard by applying the four *Dunn* factors to the record evidence at the time of summary judgment, there was no disputed issue of material fact that the defendants violated Brocuglio's right to be free from an unreasonable search. Defendants have not argued that I overlooked evidence presented at summary judgment, nor have they demonstrated that I ignored controlling law in issuing my ruling. Indeed, the defendants are primarily asking me to re-evaluate the evidence I already considered at summary judgment.

Even though the question whether a particular piece of property is curtilage is generally a factual issue, here there were no genuine issues of material fact for the jury to resolve. Thus, based on the undisputed facts at summary judgment, it was proper to conclude as a matter of law that Brocuglio's back yard was curtilage.

a. Proximity

It was undisputed at the time of summary judgment that Brocuglio's back yard was located immediately adjacent to the rear of Brocuglio's single-family home in a residential setting. There are no fixed distances that mark the difference between curtilage and open fields, nor is it proper to mechanically apply one of the *Dunn* factors to the exclusion of the others. *See Reilly*, 76 F.3d at 1277. Nevertheless, the undisputed immediate proximity of the back yard to

the home strongly weighs in favor of a determination that the back yard was curtilage. Usually the question whether a piece of land is curtilage or open fields arises in a context where the piece of land is some distance from the home or enclosed by a perimeter fence rather than an internal fence,[4] not where the land is a fenced-in back yard immediately adjacent to a home. *See, e.g.*, *id.* at 1274-75 (addressing whether cottage 375 feet from house and a wooded area 125 feet from house were curtilage); *Dunn*, 480 U.S. at 302 (analyzing whether a barn 60 feet from the home was within the curtilage). Indeed, in contrast to open fields, although there may not be an actual legal presumption that a fenced-in back yard is curtilage, curtilage is often defined as the area immediately adjoining the home. *See, e.g., Reilly*, 76 F.3d at 1275-76.

b. Enclosure

At summary judgment, it was undisputed that Brocuglio's back yard was fenced. The portion of the fence through which Proulx and O'Connor entered, the portion facing the front of the house, was a six-foot solid stockade fence that was primarily opaque. The fence contained a solid gate that could be opened and closed. *See* Plaintiff's Exhibit 4 in Support of Partial Summary Judgment (O'Connor's testimony in the criminal trial) at 69-70, 77 (doc. # 33); Plaintiff's Exhibit 6 in Support of Partial Summary Judgment at 146-47; Plaintiff's Exhibit 13 in Support of Partial Summary Judgment at 419-20.

This factor weighs heavily in favor of a determination that the back yard was curtilage. In *Reilly*, the Second Circuit upheld the District Court's decision that a wire fence surrounding only

[4] A perimeter fence encloses the home-owner's entire property, which may include areas that are not protected curtilage. An internal fence encloses the area adjacent to the home, not necessarily limited to the back yard, but less inclusive than the perimeter fence. *See Reilly*, 76 F.3d at 1278.

three sides of the property weighed in favor of the homeowner. *Reilly*, 76 F.3d at 1277-78. In that case, part of the fence had fallen down, and part of the border of the property included hedgerows and woods, rather than an actual fence. In addition, the Second Circuit has indicated that this factor is meant to weigh against the homeowner in cases where the disputed land is divided into separate parts by internal fencing, and one part of the property is enclosed in a perimeter fence, while another part is enclosed in an internal fence. *See id.* at 1277-78. Brocuglio's back yard was not divided into separate parcels by internal and external fences, but rather the perimeter was surrounded by a single fence; accordingly, this factor also weighs in Brocuglio's favor.

c. Use

At summary judgment there was no evidence in the record to indicate how Brocuglio used the property. "Use" means the way Brocuglio *actually* used the back yard, not the officers' subjective perceptions of how he used the back yard. *See Reilly*, 76 F.3d at 1278. At oral argument on the motion for summary judgment, as well as on the motion for reconsideration, defendants argued that, because Brocuglio did not submit evidence on this factor, there was necessarily a material issue of disputed fact regarding whether the back yard is curtilage. *See* Jan. 30, 2002 Tr. at 23-24. That argument is incorrect as a matter of law. No single *Dunn* factor is dispositive. Brocuglio did not have the burden to prove this particular factor, but rather had the burden to prove that the back yard was curtilage. That Brocuglio did not submit evidence on this factor does not mean that Brocuglio failed to meet his burden of proof, nor does it create a disputed issue of material fact. Once Brocuglio came forward with evidence on the over-arching issue whether the back yard was curtilage, the burden shifted to the defendants to submit

evidence to show that there were material facts in dispute for the jury to resolve. They did not do so. There was no evidence either way on this particular factor. The absence of evidence on this factor does not advance Brocuglio's position, but that does not mean that there is a triable issue of fact for the jury. The ultimate inquiry is whether Brocuglio had a reasonable expectation of privacy in his back yard. Because there were no genuine issues of material fact for the jury to resolve, it was appropriate for me to grant summary judgment as a matter of law.

d. Visibility

It was undisputed at summary judgment that the fence was a six-foot-high, stockade-style fence with a solid gate,[5] and that the officers could not see over the gate into the back yard unless they jumped. *See* Plaintiff's Exhibit 4 in Support of Partial Summary Judgment (O'Connor's testimony at Brocuglio's criminal trial) at 69-70, 77 (doc. # 33); Plaintiff's Exhibit 6 in Support of Partial Summary Judgment at 146-47; Plaintiff's Exhibit 13 in Support of Partial Summary Judgment at 419-20. It is also undisputed that the portion of the fence through which the officers entered contained "No Trespassing" signs visible to at least one of the officers. *See id.* Defendants did not contest that evidence at summary judgment, nor did they offer any other evidence with respect to the nature of the fence surrounding the back yard. *See* Defendants' Exhibits (A-C) in Opposition to Summary Judgment (doc. #37 attachments).

At summary judgment, the record contained some evidence that Proulx and O'Connor, standing from an area to the rear of the back yard or from the driveway in the front of the house, may have been able to see over the fence and observe vehicles that appeared to be in a dilapidated condition, but not that the vehicles were unregistered in violation of Town Ordinance

[5] There is some discussion in the record concerning whether the gate was open or closed.

21-1 ("town ordinance"). *See, e.g.*, Plaintiff's Exhibit 4 in Support of Partial Summary Judgment. It does not matter that Proulx and O'Connor may have been able to see some parts of the back yard from particular vantage points. There is no requirement that an area be completely invisible to those standing in the open fields in order to be deemed curtilage. *See Reilly*, 76 F.3d at 1279. The crux of this factor is whether the homeowner took steps to keep the relevant area private and to protect the area from observation from outside the curtilage. *See id.* Here, the maintenance of a solid, six-foot stockade fence and the posting of "No Trespassing" signs satisfies this factor. At summary judgment, there were no disputed issues of fact for the jury to resolve. Based on that undisputed evidence, this factor supports the conclusion that the back yard was curtilage.

To the extent that defendants now argue that I should consider evidence submitted at trial in reconsidering my summary judgment ruling, I reject that argument. Defendants have not met the standard for showing that the evidence they want me to consider is newly discovered evidence. Principally, defendants want me to consider the answers to the jury interrogatories in which the jury determined that, from the church behind Brocuglio's back yard, the defendants could see unregistered vehicles in the back yard. First, that evidence was in the defendants' possession at the time of summary judgment, because it addresses their own knowledge. Second, there was evidence in the summary judgment record that the officers may have been able to see what appeared to be a dilapidated vehicle in Brocuglio's back yard; having considered the entire record at the time I issued my summary judgment ruling, I already considered that fact.

Even if I were to consider the evidence that defendants submitted at trial, however, it would not change my summary judgment ruling. I would still find that the proximity, enclosure,

and visibility factors weigh in Brocuglio's favor and the use factor is either neutral or weighs somewhat against him. For the reasons discussed above, considering all of the evidence at summary judgment and trial, I conclude that Brocuglio's back yard was curtilage.

In addition, defendants argue that the law was not clearly established with respect to whether the back yard was curtilage, in part because there was no case law prior to 1996 holding with sufficient clarity that a person's back yard is definitely part of the curtilage, and in part because the curtilage determination involves an analysis of four factors rather than application of a bright-line rule.

In March 2002, defendants appealed my summary judgment ruling. On June 13, 2003, the Second Circuit Court of Appeals issued a Summary Order, holding that to the extent defendants were appealing factual issues, those issues were not immediately appealable. To the extent the defendants raised pure questions of law, however, the Court determined the defendants' contentions were without merit. *See Brocuglio v. Proulx*, 67 Fed. Appx. 58 (2d Cir. 2003) (non-precedential summary order). The Court wrote:

> At the time of the events giving rise to this action, it was clearly established that the Fourth Amendment warrant requirement applies to administrative searches such as this, *see Michigan v. Tyler*, 436 U.S. 499, 505 (1978), and that a fenced-in back yard is "curtilage" entitled to Fourth Amendment protections. *See Oliver v. United States*, 466 U.S. 170, 180 (1984); *United States v. Dunn*, 480 U.S. 294, 300 (1987).

*Id.* Merely because the determination whether a given area is curtilage involves an analysis of four factors, as opposed to a bright-line rule, does not render officers immune from suit. It is not necessary for the very action in question previously to have been held unlawful in order to bar the application of qualified immunity. *Wilson v. Layne*, 526 U.S. 603, 615 (1999). Rather, qualified immunity will not apply if, in "light of pre-existing law the unlawfulness [of the action is]

apparent." *Id.* Thus, the defendants' argument that the law was not clearly established with respect to whether a fenced-in back yard attached to the home was curtilage is without merit. *See Oliver*, 466 U.S. at 180; *Dunn*, 480 U.S. at 300.

Finally, defendants' central argument is that, notwithstanding the entire preceding discussion, defendants would still be entitled to qualified immunity because reasonable officers could disagree whether defendants' actions were unlawful. I held at summary judgment that there were no material issues of disputed fact that would affect this question, and defendants have not pointed to any facts or controlling law that I overlooked at the time. The Second Circuit has held that when "'the factual record is not in serious dispute . . . [t]he ultimate legal determination whether . . . a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide.'" *See, e.g., Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995) (quoting *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir.), *cert. denied*, 498 U.S. 967 (1990)). Applying the objective reasonableness test to the undisputed facts at summary judgment, "officers of reasonable competence" could not disagree that defendants' actions were illegal. *See Lennon*, 66 F.3d at 420-21.

In addition, even now, considering all of the facts submitted at trial, I would hold that as a matter of law reasonable officers would not have thought that it was lawful to enter Brocuglio's fenced-in back yard without a warrant. In their memorandum in support of their motion for reconsideration, defendants emphasize the fact that, from the parking lot behind the back yard and from the public areas in front of the house, the officers could see vehicles in Brocuglio's back yard that appeared to be in violation of the town ordinance. *See* Defendants' Memorandum in Support of Motion for Reconsideration at 6, 9-10. There was evidence at summary judgment

that the officers could see vehicles that appeared to be in violation; there was simply more evidence presented at trial on that point. Even though the officers could see vehicles by looking over the fence or from the parking lot behind Brocuglio's back yard, I hold as a matter of law that in September 1996 reasonable officers would have known that they could not lawfully enter the fenced-in back yard immediately adjacent to Brocuglio's single family home without a warrant.

There were no exigent circumstances here, nor have defendants argued that there were. There was almost no risk that the evidence, the allegedly abandoned vehicles, would be lost while obtaining a warrant. There was evidence that some of the vehicles were not able to be driven. The vehicles were rather large items, not capable of being transported easily. The defendants, from their lawful vantage point outside the curtilage, either from the parking lot behind the back yard or from the public areas in the front of the house, were free to observe the alleged violations in the curtilage. Armed with those observations, they could have gone to a neutral judge or magistrate and applied for a search warrant that would have authorized them to enter the curtilage to ticket the vehicles in violation of the town ordinance.

B. Qualified Immunity Regarding Plain-View Exception to Warrant Requirement

Defendants next argue that reasonable officers could disagree about whether the plain-view exception to the warrant requirement applied to justify the officers' warrantless entry into Brocuglio's back yard. Defendants did not raise that argument at summary judgment.[6]

---

[6] A motion for reconsideration is not meant to give a party the opportunity to present alternate legal theories. *See Lopez*, 375 F. Supp. 2d at 21-22. There was evidence in the record at summary judgment from which the defendants could have made the argument that the plain-view doctrine applied. They chose not to make that argument. I address the argument now even though it is not a proper basis for a motion for reconsideration. In addition, the evidence that defendants ask me to consider with respect to the jury's answers to special interrogatories is evidence that was in the summary judgment record, albeit not supported by the conclusiveness of

Defendants raise the plain-view argument now based on the jury's findings that the officers could see that the vehicles in Brocuglio's back yard were unregistered, and thus in violation of the town ordinance. Defendants' argue, in essence, that because they could see a violation in a constitutionally protected area from their vantage point in an area that was not constitutionally protected, they could enter the constitutionally protected area without a warrant to search for the fruits of that crime pursuant to the plain-view doctrine. That argument fails, because it misconstrues the scope of the plain-view doctrine.

The plain-view doctrine is an exception to the warrant requirement, meaning that if each of the requirements of the plain-view doctrine is met, officers may seize an object without a warrant in a situation where they would have otherwise needed a warrant to seize the object. *See generally* 1 LAFAVE § 2.2(a). "Under [the plain-view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, *and if the officers have a lawful right of access to the object*, they may seize it without a warrant." *United States v. Miller*, 430 F.3d 93, 102 (2d Cir. 2005) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) (emphasis supplied)). Not every object in an officer's plain view in the descriptive sense qualifies as an object that meets the requirements of the plain-view doctrine in a legal sense. *See* 1 LAFAVE § 2.2(a). That distinction was clearly established prior to September 1996. *See Dickerson*, 508 U.S. at 375 (holding that for plain-view doctrine to excuse warrant requirement, officer must have lawful access to object).

Here, the plain-view doctrine does not apply because, even though the officers could see

---

a jury finding. *See, e.g.*, Plaintiff's Exhibits 4 and 6 in Support of Motion for Partial Summary Judgment.

violations of the town ordinance in their "plain view" in the descriptive sense, the officers did not have lawful access to Brocuglio's back yard, and thus one of the requirements of the plain-view doctrine was not met. The back yard was curtilage, and therefore the officers were required to obtain a search warrant prior to crossing the threshold of the curtilage, because the curtilage receives the same Fourth Amendment protections as the home itself. I will assume for present purposes that the officers could see vehicles in violation of the town ordinance in Brocuglio's back yard from either the front of the house or from the parking lot behind Brocuglio's back yard. That the officers could see a violation of a town ordinance in their "plain view" does not mean that the "plain-view doctrine" applied, because the officers did not have lawful access to the protected curtilage. The following example is instructive:

> Assume, for example . . . an officer while standing on the public way is able to look through the window of a private residence and see contraband present therein. The fact that the presence of the contraband in the residence was discovered by resort to plain view instead of, say, information supplied by a reliable informant, has no bearing upon the question of whether an intrusion into those premises may now be made for the purpose of seizing that contraband.

1 LaFave § 2.2(a) at 450. Rather, if the officer wants to enter the home to seize the contraband, the officer must apply for a search warrant, and in his application for a search warrant, he may rely upon the observations he made while standing on the public way. *Id.* In sum, the plain-view doctrine does not provide access to a constitutionally protected area; instead, the doctrine applies when an officer already has legal access to a constitutionally protected area in order to justify an additional search or seizure not contemplated by the original basis for access.

Here, the defendants misconstrue the plain-view doctrine. The officers could lawfully seize the vehicles parked in front of the house, because those vehicles were located in a public

place or open field; thus, the officers had legal access to those vehicles, and they did not need to obtain a search warrant in order to seize them. Public places and open fields do not receive the same Fourth Amendment protections as the home and curtilage. Still, the officers could not ticket the vehicles in the back yard without first obtaining a warrant, because the back yard was curtilage.

The defendants concede that the law was clearly established in 1996 with regard to the elements of the plain-view doctrine. *See* Defendants' Memorandum at 18. Rather, they argue that reasonable officers could disagree about whether the plain-view doctrine applied to the facts of this case. Defendants apparently suggest that reasonable officers could think that, as long as they could see cars in violation of the town ordinance in their plain view in the descriptive sense, the plain-view doctrine applied. Alternatively defendants also seem to argue that, because the officers could legally ticket the vehicles in the front of the house, reasonable officers could disagree about whether they could continue ticketing vehicles in the fenced-in back yard.

I disagree. Qualified immunity is an objective standard. *See Lennon*, 66 F.3d at 420. Reasonable officers would know that in order for the plain-view doctrine to apply, they would need lawful access to the object. In addition, reasonable officers would know that the curtilage is treated differently than the public areas in front of a home. I hold that, even considering the additional evidence supplied since summary judgment, the defendants are not entitled to qualified immunity as a matter of law.

## III. Conclusion

Defendants violated Brocuglio's right to be free from unreasonable searches when they entered his fenced-in back yard adjacent to his home without a warrant, and they were not entitled to qualified immunity because reasonable officers could not disagree that the conduct was illegal. At summary judgment, there were no issues of material fact that would alter that conclusion, and thus, summary judgment was proper as a matter of law. Upon reconsideration of that decision, defendants have not pointed to controlling facts or law that I overlooked. In addition, even though defendants have not met the standard for newly discovered evidence, and even considering all of the evidence submitted at trial, I hold that defendants were not entitled to qualified immunity as a matter of law. Finally, considering all of the evidence at trial and summary judgment, defendants are not entitled to qualified immunity on the newly advanced theory that reasonable officers could disagree whether the plain-view doctrine applied. Therefore, Defendants' Motion for Reconsideration (**doc. # 156**) and Request for Entry of Judgment as a Matter of Law is **GRANTED IN PART** and **DENIED IN PART**; reconsideration is granted, but the relief requested is denied.

It is so ordered.

Dated at Bridgeport, Connecticut, this 23rd day of March 2007.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge